## Hugh Humphrey v. Peter J. Ringler, Appellant.

**Evidence.** Sustains finding that a deed should be set aside for
1   fraud.

**Pleading: inconsistency.** A prayer that a deed be set aside for
2   fraud, or if it be held valid, that the contract price be recovered
and a vendor's lien given, is neither contradictory nor inconsistent.

*Appeal from Dickinson District Court.*—Hon. George
H. Carr, Judge.

### Thursday, April 4, 1895.

Action to quiet title in the plaintiff to the east half
of the northwest quarter, section 33, township 99, range
38, W., fifth P. M., Dickinson county, Iowa, and for
other relief. The issues and the facts sufficiently
appear in the opinion. Decree was entered in favor of
the plaintiff, from which the defendant appeals.—
*Affirmed.*

*H. E. Long* for appellant.

*Parker & Funk* and *Frank G. Clark* for appellee.

Given, C. J.—I. The following transactions are
shown by the pleadings and proofs without controversy:
James Humphrey was the owner of eighty acres of land
described, and upon which he and his wife, Mary,
resided as their homestead. He also owned an adjoin-
ing eighty and a small amount of personal property.
On December 2, 1889, said James and Mary Humphrey
executed a mortgage to the Security Loan & Trust Com-
pany on the eighty acres described, to secure a loan of
three hundred dollars. This amount Mary Humphrey
loaned to the defendant on the same day it was received,

taking his promissory note therefor, payable to her, with eight per cent. interest, secured by a chattel mortgage on five horses. On December 4, 1889, James Humphrey executed a deed for said eighty acres to his wife, Mary; and thereafter, on the thirty-first day of May, 1890, said Mary Humphrey executed a deed for eighty acres to the defendant. On the same day, May 31, 1890, Mary Humphrey executed and acknowledged a satisfaction in full of said chattel mortgage. On November 28, 1890, James and Mary Humphrey joined in a deed to the plaintiff for said eighty acres of land, and at the same time assigned to him all their "right, title, interest, and claim in and to the debt due from Peter J. Ringler on account of the sale to him of the following described premises, to-wit," (describing said eighty acres), and to said promissory note and chattel mortgage, "for the use and benefit of the undersigned." Plaintiff alleges as follows: "Par. 6. That said deeds from James Humphrey to his said wife, and from his said wife to defendant, were procured by false representations, coercion, and undue influence, in this: Par. 7. That the said James Humphrey and the said Mary Humphrey, his wife, were persons of weak mind, with no education, and little experience in life, and have no business training, experience, or education whatsoever. Par. 8. That, some time prior to the execution of said deed by James Humphrey to his said wife, the defendant, with the unlawful intent and purpose of procuring a deed to said premises in his own name, did hold out and represent to said James Humphrey that this plaintiff, Hugh Humphrey, was attempting to, intended and designed to, obtain title to said premises, and was maneuvering and figuring to get title thereto in himself, and that, if the said James Humphrey continued to hold the title to said land, he, the said Hugh Humphrey, would get the same away from him; and the said

defendant did lead the said James Humphrey to believe that this plaintiff would obtain title to said premises, and cheat and defraud the said James Humphrey out of his said land, and, believing said facts, the said James Humphrey executed and delivered to his said wife a deed to said premises. Par. 9. That said Ringler, to aid and assist him in getting title to said premises, did unlawfully, and by seductive influences and promises, enlist the sympathies of said Mary Humphrey, and did lead the said Mary Humphrey to believe that her husband was unfriendly to her, was abusing and ill-treating her, and that he had no love or affection for her, and that she ought to procure his property, and hold same as against him; and he did then and there, and prior thereto, alienate the affections of the said Mary Humphrey from her said husband, and procured her advice, counsel, and assistance in obtaining the title to said premises in her own name with intent on the part of said defendant to thereafter procure from her the title to said premises. Par. 10. That, having in view said purpose, he did alienate the affections of said wife from her said husband, and the said defendant and the said wife did induce the said Humphrey to believe, and he did believe, that he ought to deed the said premises to his said wife, in order to prevent this plaintiff from obtaining title thereto, and cheating and defrauding the said Humphrey out of said premises. Par. 11. That the said defendant, having obtained an undue influence over said Mary Humphrey, and having alienated her affections from her said husband, and having obtained full power and control over her, did advise, counsel, and lead the said Mary Humphrey to believe that if she would deed the said premises to said defendant, and give him title thereto, he would employ, control, and use the same for their mutual interest, he

(the said defendant) and the said Mary Humphrey having then and there driven the said James Humphrey from his home and from the said premises, and he (the said defendant) and the said Mary Humphrey having then and there been living and cohabiting together upon the said premises, and he having obtained full control and power over her, did unlawfully, feloniously, and without any consideration or compensation whatsoever, induce the said Mary Humphrey to deed to him the premises aforesaid." Plaintiff alleges that Mary Humphrey was induced to execute said deed to defendant upon his promise to pay to her one thousand dollars therefor. He further alleges that Mary Humphrey was induced to execute the release of said chattel mortgage by like undue influence, persuasions, and inducements, without any consideration therefor. Plaintiff asks that the deed from Mary Humphrey to the defendant be canceled and set aside, or that, if said deed is found to be valid and legal, he have judgment against the defendant for one thousand dollars, with interest and a vendor's lien therefor upon said eighty acres of land. He also asks that the satisfaction of said chattel mortgage be set aside, and that he have judgment upon said promissory note and foreclosure of said chattel mortgage. Defendant answered, admitting the conveyance to Mary Humphrey, and from her to him, the satisfaction of said chattel mortgage, and denying every other allegation in the petition. He avers that said chattel mortgage was fully paid, and that the price agreed between him and Mary Humphrey for said eighty acres was seven hundred dollars; that he assumed said three hundred dollars mortgage, and was to pay four hundred dollars, secured by a second mortgage, "as soon as she obtained the signature of James Humphrey to the deed of the conveyance of said land or

the quitclaim deed from him to defendant for said land, and that she has failed to obtain said quitclaim deed."

II. It is unnecessary that we set out or discuss the evidence in detail, as to do so would extend this opinion to an unwarranted length. We think the evidence fairly shows that James and Mary Humphrey were both persons of weak mind, uneducated, inexperienced in business, and easily persuaded and deceived. We are equally convinced that the defendant had acquired a strong influence over them, especially over Mrs. Humphrey, and that it was by his representations and persuasions that they were induced to enter into the transactions mentioned other than those with the plaintiff, and that the defendant did so influence them for the purpose of cheating and defrauding them out of their property. We mention, as among the facts which led to these conclusions, the following:

Prior to his removal from Benton to Dickinson county, in 1889, the business of James had always been managed by his brother, the plaintiff, because of James' incapacity and the incapacity of his wife after their marriage. Under that management, something had been added to what James inherited from his father, so that at the time he removed to Dickinson county he had some money and chattel property, as well as the one hundred and sixty acres of land mentioned. The defendant's influence over these people is shown by the fact that they were induced to borrow three hundred dollars, and mortgage their homestead for the purpose of loaning the three hundred dollars to the defendant on chattel mortgage security. The defendant was then a young unmarried man, with but a small amount of personal property, all or nearly all of which was under mortgage. Our conclusions are confirmed by the fact that within the period of six months the defendant, with his limited means, became the owner of said homestead, eighty

acres of land, subject only to the mortgage of three hundred dollars, and a satisfaction of his chattel mortgage for three hundred dollars; while James and Mary Humphrey were left destitute and without a home. Appellee cites authorities to the effect that, "for matters of opinion, a contract or conveyance will never be rescinded or set aside." It was by more than mere expressions of opinion that the defendant accomplished these frauds upon James and Mary Humphrey. We are in no doubt but that Mary Humphrey was induced to execute the deed she did to the defendant, without consideration, through undue influences exerted by defendant for the purpose of fraudulently acquiring the property. We are equally satisfied that Mrs. Humphrey was induced to execute the release of the chattel mortgage without consideration, and by the same influences. Notwithstanding defendant's claim that he paid the amount of his mortgage note to her, it is shown that, on the same or next day after the alleged payment, the charitably disposed people of Spirit Lake city raised a fund with which to send Mrs. Humphrey to her husband, at their old home in Benton county. It is seldom that a fraud is more satisfactorily established than that charged against this defendant.

III. Defendant contends that plaintiff sets up two contradictory and inconsistent causes of action in his petition,—namely, to cancel the deed to defendant, and to recover the contract price for the land and for a vendor's lien; and that, therefore, he cannot recover in this action. This claim seems first to have been made in this court. It is based upon a misapprehension of the pleadings. Plaintiff does ask that the deed be set aside, and for the alternative relief that, in case it is found to be valid, he may recover the contract price, and have a vendor's lien. Thus presented, the causes of action are not contradictory nor

inconsistent.   Defendant contends that this action should have been dismissed because the plaintiff did not offer to repay two installments of interest which it is claimed the defendant paid on the mortgage loan from the Security Loan & Trust Company.   It does not appear that plaintiff knew of those payments at the time the action was brought, nor did the defendant allege the same in his answer.   Defendant's counsel discuss at some length the evidence upon which it is claimed that the defendant paid the chattel mortgage note in full.   While there is some evidence tending to show payment, we are satisfied, from all the testimony, that the release was secured without consideration, and that said chattel mortgage should be held in full force. As we reach the conclusion that the deed to defendant should be set aside, we need not consider the question of plaintiff's right to a vendor's lien.   Plaintiff claims to hold all this property in trust for the benefit of James and Mary Humphrey.   He states in his testimony: "I took the deed to this land so that I might save something for James and Mary.   I paid him three hundred dollars on the purchase price; am supporting him now; and give them money for maintenance."   It is argued from this statement that plaintiff was an absolute purchaser of the land, but, taking his entire testimony, it is very clear that he holds it, as well as other property, in trust for James Humphrey and his wife.

The decree of the district court is fully warranted by the pleadings and the evidence, and is therefore *affirmed.*